In the United States Bankruptcy Court
for the
Southern District of Georgia
Savannah Division

FILED
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By rsimmons at 4:57 pm, Nov 21, 2014

In the matter of: )
) Chapter 13 Case
WILLIAM ARENDARCZYK, JR. )
) Number 14-40844
Debtor )

### OPINION AND ORDER ON GREEN TREE SERVICING LLC'S OBJECTION TO CONFIRMATION

Debtor's case was filed on May 30, 2014, and a meeting of creditors pursuant to 11 U.S.C. § 341 was held on June 27, 2014. Dckt. Nos. 1, 18. Green Tree filed an Objection to Confirmation of Debtor's Plan on July 18, 2014, based on the valuation assigned to its collateral. Dckt. No. 25. The case first came on for confirmation on July 23, 2014, and was continued because of the dispute between the parties over valuation. Dckt. No. 29. The parties consented to a continuation of confirmation, and the Court entered a Continuation Order for the purpose of allowing Green Tree to obtain an appraisal of the property which was completed and was the subject of the hearing on September 3, 2014. *Id.* Also a subject at the hearing, was Debtor's objection to the timeliness of Green Tree's filed Objection, which Debtor contends should not be considered because it was filed more than fifteen (15) days after the § 341 meeting of creditors.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Anthony A.

Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(L). In accordance with Bankruptcy Rule 7052, the Court makes the following Findings of Fact and Conclusions of Law.

Debtor resides in a manufactured home located at 211 Canvasback Drive, Bloomingdale, Georgia (the "Property"). Dckt. No. 1. Debtor's residence is encumbered by a claim against the real estate in favor of Galin Mortgage listed in Debtor's schedules in the amount of $10,760.46 and a claim against the 1999 Grand Manor manufactured home in favor of Green Tree in the amount of $69,724.28. *Id.* Debtor valued the Property in his schedules at $14,000.00. *Id.*

Debtor's Plan proposes to pay interest on both of the claims related to the Property at a rate of 3.25 percent per annum. Dckt. No. 2. Green Tree primarily objected on the dual grounds that it believes the manufactured mobile home should be valued at a minimum of $19,464.52, and further, that the proposed interest rate of 3.25 percent is not appropriate under applicable precedent as to cramdown interest rates on secured loans. Dckt. No. 25.

The matter was called for a hearing on September 3, 2014, at which time a preliminary objection to the standing of Green Tree was raised by Debtor's counsel. He argued that based on a rule stated in the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines noticed by the Court, any objection to confirmation to be considered

AO 72A
(Rev. 8/82)

2

timely had to be filed within fifteen (15) days of the 341 meeting or July 14. Green Tree's Objection was filed on July 18, 2014; therefore, the Objection was outside the fifteen (15) day window, yet it had been pending for five (5) days as of the initial confirmation date on July 23, 2014. The parties agreed to continue confirmation in order for Green Tree to obtain an appraisal of the Property which it did prior to the continued hearing. However, later there arose a disagreement between counsel for the parties as to whether Debtor reserved the right to continue his objection to the timeliness of Green Tree's Objection to Confirmation, or whether, as contended by Green Tree's counsel, Debtor agreed to waive the timeliness objection and deal strictly with valuation at the subsequent hearing.

The Court determined that it would take that matter under advisement, conduct the valuation hearing, and rule on both issues in a combined order. At the conclusion of the hearing, the Court allowed ten (10) days for the parties to brief the timeliness issue and for counsel for both parties to file affidavits of their differing recollections concerning the waiver question so that the Court could rule on it as a preliminary standing issue. The parties submitted these documents, and after consideration of their positions, I make the following findings regarding the timeliness of Green Tree's Objection to Confirmation.

Green Tree's counsel's affidavit states in relevant part:

> 14. [Debtor's counsel] never expressly stated that this mutually agreed upon continuance waived Debtor's argument about the timeliness of Green Tree's Objection. However, [counsel] also never expressly stated that this continuance did not resolve his timeliness argument nor was this argument expressly reserved.
>
> . . . .
>
> 20. It is my impression and belief that any misconceptions by the parties regarding waiver of Debtor's timeliness argument, the intent surrounding the continued confirmation, and the authority given to Green Tree to obtain an appraisal for benefit of itself and the Trustee, are solely a misunderstanding between [Debtor's counsel] and myself, based on a lack of clear communication.

Dckt. No. 38. Based on this statement, Debtor's attorney's affidavit, which states that no express or implied waiver was ever made, and a review of the email traffic between counsel for the parties and the staff attorney for the Office of the Chapter 13 Trustee, it is clear that Debtor's counsel never expressly waived the right to raise the timeliness issue at a later time. Any implied waiver construed by Green Tree was due to a lack of clear communication between the parties which cannot be attributed solely to Debtor's counsel. Therefore, I find that there was no waiver of Debtor's timeliness objection. That, however, does not end this inquiry; the Court must also address the equities of Debtor's timeliness objection.

The Federal Rules of Bankruptcy Procedure give some guidance on this issue. Rule 3015(f) states in relevant part: "An objection to confirmation of a plan shall be filed and served on the debtor, the trustee, and any other entity designated by the court, and

shall be transmitted to the United States trustee, *before* confirmation of the plan." (Emphasis added). However, this Court, like others, has instituted a rule which requires objections to be filed well in advance of the confirmation hearing. *See* In re Dorn, 295 B.R. 872, 874 (Bankr. E.D. Ark. 2003)("General Order Number 20 . . . provides that objections to confirmation of the debtor's plan in chapter 13 cases must be filed . . . and served on the chapter 13 trustee and the debtor before the 10th day after the 341(a) meeting of creditors is concluded.").

In this Court the rule in question is included in the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines and states:

> ***Objections to Confirmation*** . . . must be filed with the Clerk not later than fifteen (15) calendar days following the conclusion of the creditors' meeting. Objections shall be timely served on the Trustee, debtor, and debtor's counsel. At confirmation, parties with standing to appear and be heard will be limited to debtors, the Trustee, creditors who timely filed and served an objection, and counsel for any of the above.

Dckt. No. 8. Because the confirmation hearing may be held as early as twenty days after the date of the meeting of creditors (*see* 11 U.S.C. § 1324(b)), Green Tree is correct in pointing out that the policy consideration for implementing such a deadline is to give the debtor ample time to prepare for confirmation after an objection is filed. *See* In re Duncan, 245 B.R. 538, 542 (Bankr. E.D. Tenn. 2000)(*quoting* Keith M. Lundin's bankruptcy treatise: "There has to be content in the deadlines for objections to confirmation else it is impossible for debtors and

trustees to adequately prepare for hearings on confirmation.").

Green Tree is also correct in pointing out that this policy consideration was no longer an issue once the confirmation hearing was continued. While the late-filed Objection would have only given Debtor approximately three (3) business days to address the Objection, that concern was alleviated when the parties agreed via email on July 22, 2014, to sign a consent order continuing confirmation. Confirmation was continued until September 3, 2014, giving Debtor approximately six (6) weeks to prepare for the Objection.

The Court does not take lightly the allowance of Green Tree's late-filed Objection to Confirmation; however, the equities favor the creditor. As discussed *supra*, the policy consideration served by the deadline was eliminated once the confirmation hearing was continued. Debtor had ample time to prepare for Green Tree's Objection. And, the Court has inherent discretion to depart from its Local Rules in certain situations. *See* Cohen v. Carnival Cruise Lines, Inc., 782 F.2d 923, 924 (11th Cir. 1986)("[E]ven though local rules are valid and binding on the parties, their enforcement must be tempered with due consideration of the circumstances."). Moreover, it should be noted that the rule in question is not a Local Rule or a General Order of the United States Bankruptcy Court for the Southern District of Georgia. Rather, it is a deadline implemented by the Court's notice of the case to protect the debtor from being overwhelmed with objections to confirmation on the eve of the hearing. Clearly if the Court has discretion to depart from its Local Rules, then it would enjoy that same discretion in departing from the deadline in question, considering

AO 72A
(Rev. 8/82)

6

the circumstances of this case.

In the Court's opinion those circumstances include the policy considerations behind the deadline discussed *supra*, as well as any prejudice to the parties. If the Court disallows Green Tree's Objection as untimely, then its claim will be set at the value proffered by Debtor of $14,000.00, approximately $58,000.00 less than the amount listed on Green Tree's Proof of Claim and approximately $5,600.00 less than the fair market value of the mobile home as calculated by Green Tree's expert appraiser. Green Tree will also be prejudiced by incurring additional expenses associated with hiring an appraiser to conduct an appraisal and testify at trial. Presumably, had Green Tree known its Objection would be disallowed on procedural grounds, it would not have incurred these additional expenses until the procedural issue was decided.

Debtor is prejudiced if the late-filed Objection is allowed. However, Debtor is not prejudiced in the sense that he is denied the opportunity to adequately prepare to litigate Green Tree's Objection to Confirmation, which, as discussed *supra*, is the reason behind the Court's fifteen (15) day deadline; rather, he is prejudiced in the sense that the Court will not automatically accept his lower NADA value for the manufactured home based on the procedural untimeliness of the Objection. I conclude that the equities here favor Green Tree and will allow its Objection to be decided on the merits.

Debtor testified that he took into account the NADA book value for homes

of the identical make and model as his home, which Debtor's counsel proffered was in the amount of $18,400.00. From that number Debtor and his counsel concluded that based on the condition of the home, they would propose a valuation in the plan of $14,000.00. The conditions requiring attention include $7,000.00 to repair the roof, $1,000.00 to replace/repair the air conditioning unit, which is currently not working properly, and other damages to the interior of the home caused by leaks directly attributable to the roof condition. Debtor contends therefore that the $14,000.00 figure is generous and should be approved by the Court. Debtor testified credibly as to the current condition of the home and estimated cost of repair.

Green Tree produced an appraisal which was accepted into evidence without objection (Green Tree Ex. 1), together with the testimony of the appraiser, John E. Jones, Jr. He conducted both a cost and comparable sales approach methodology (with all the weight placed on the latter) and reached a final estimate for the fair market value of the manufactured home and lot of $44,000.00 (as is). Because the real estate on which the manufactured home sits appraised at $24,400.00, the final estimate yielded a value for the manufactured home itself of $19,600.00.

Green Tree's appraiser identified a list of comparables to Debtor's manufactured home, the best of which ranged in value from a low of $3,021.00 to a high of $68,000.00. The lowest and highest valued comparables are located very close to the subject Property (within 0.5 miles) whereas some of the others are located further away. The two

AO 72A
(Rev. 8/82)

8

higher valued comparables are nine year old manufactured homes compared to the subject home's fifteen year age.

The Court asked Green Tree's expert to do a comparable separation of value between land and structure on Comparable 7, which is a listing (not an actual sale) in the same neighborhood as Debtor's home. The net indicated value of that manufactured home is $28,036.00. In each case of a comparable with an average/good rating in Functional Utility, the appraiser made a dollar-for-dollar reduction in the indicated value in the amount of $7,000.00 to account for roof repairs. While I find, based on the description of the home from the testimony of the witnesses, that additional interior work would be necessary to bring it to an acceptable condition for sale, I conclude that the suggested appraisal value of $19,600.00 is well-supported by the weight of the evidence in this case.

Debtor pointed out that the comparables used by Green Tree's appraiser are of homes which are permanently affixed to real estate and sold in conjunction with the underlying land. Therefore, Debtor argued that the appraiser's method of obtaining a value of the comparable properties as a whole and then backing out the value of the land is not the most direct method of valuation, and that the NADA value he used should be more persuasive to the Court.

Debtor's point is well-taken; however, utilizing a pure NADA valuation method is also not without its limitations. The NADA guide book value for a manufactured

AO 72A
(Rev. 8/82)

9

home does not represent the value of the home based on multiple actual sale transactions. NADAguides Frequently Asked Questions Manufactured Home Value Reports, NADA GUIDES, http://www.nadaguides.com/FAQ/manufactured-home-value-reports (last visited October 22, 2014). Rather, the value represents a Depreciated Replacement Cost in Retail Dollars. *Id.* According to the NADA website, this value is the "cost to replace an item, less accrued depreciation." *Id.* The website further states:

> [k]eep in mind that the local market dictates how much the manufactured, mobile, or modular home will sell for; it may actually sell for much higher or much lower. Only a certified/licensed appraiser can estimate what a specific home is worth by inspecting the home and its features and upgrades, and then making local market adjustments.

*Id.* This Court frequently utilizes NADA guides in evidentiary hearings related to automobiles, boats, mobile homes, and the like. And, in the absence of other evidence, this remains a valid source of data. It is, however, measured for its materiality by the limits of NADA's methodology. Here, we have a value from a certified appraiser who inspected Debtor's home and made adjustments based on the local market. The weight of his evidence is more compelling than Debtor's. Thus, I still conclude that the $19,600.00 value is appropriate.

With regard to interest rate, Green Tree objected to the use of 3.25 percent which was stipulated to as being the current prime rate of interest. Green Tree argued that using the prime rate overlooks additional factors which the Supreme Court recognized in its

Till decision should be added to the base rate to account for risks, etc. Those factors are "(1) the probability of plan failure; (2) the rate of collateral depreciation; (3) the liquidity of the collateral market; and (4) the administrative expenses of enforcement." Till v. SCS Credit Corp., 541 U.S. 465, 484 (2004)(citation omitted)(internal quotation marks omitted). Language in the Till decision stating that adjustments of 1 to 3 percent are generally approved has led a number of courts to conclude that an additive in that range should be the standard adjustment to the interest rate. And, in fact, that would be a substantial savings to Debtor because it was stipulated that the contract rate of interest on this loan was 9.75 percent.

Nevertheless, Green Tree failed to acknowledge one of the more salient points from the Till decision, namely where the Court stated: "starting from a concededly low estimate and adjusting upward places the evidentiary burden squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing . . . ." Id. at 479 (emphasis omitted); see also In re Gillikin, 2011 WL 7704353, at *7 (Bankr. S.D. Ga. March 3, 2011)(Davis, J.)(applying Till to a Chapter 11 disclosure statement and holding that the creditor carries the burden of showing the proper interest rate at the disclosure statement hearing). Green Tree offered no specific evidence of what an appropriate rate should be based on the factors from Till other than to argue that some flat percentage of at least 1 percent should be added to the prime rate. As Green Tree has not met its burden, I find that prime rate of 3.25 percent advanced by Debtor is appropriate.

ORDER

Based on the foregoing I conclude that Green Tree's Objection to Confirmation is sustained; confirmation is denied. Debtor is allowed fourteen (14) days to amend his plan, assigning a value to Green Tree's collateral of $19,600.00 with interest at the rate of 3.25 percent or to take other action.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 21st day of November, 2014.